NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK ANGLE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA. <br><br> Defendant. | Civil Action No.: 12-2495 (JLL) <br><br> OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (CM/ECF No. 18) by Defendant United States of America ("Defendant" or the "Government"). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure. Upon consideration of the parties' submissions in support of and in opposition to the instant motion, Defendant's motion to dismiss is granted in its entirety.

I. BACKGROUND

Plaintiffs Frederick and Cheryl Angle, bring this action along with two of their children, Brandon and Cassandra Gadow, pursuant to the Federal Tort Claims Act ("FTCA"). (CM/ECF No. 12) ("FAC"). The Angle family lives in a two-story house located in Jefferson Township, New Jersey, approximately half a mile away from Picatinny Arsenal. (FAC ¶¶ 9-10). Plaintiffs characterize Picatinny Arsenal as a "secure military research and manufacturing installation

1

located on approximately 6,500 acres in Morris County, New Jersey." (FAC ¶¶ 8, 10). The headquarters of the U.S. Army Armament Research, Development and Engineering Center ("ARDEC"), which researches and develops armament and munitions systems, is located on the Picatinny Arsenal installation. (FAC ¶ 10).

The alleged injuries stem from April 11, 2008 at approximately 2:00 p.m. when while Cheryl and Brandon were eating in the kitchen downstairs, a fragment from "a live, unfazed M107 155-mm artillery projectile" (the "Projectile") of an approximate weight of two pounds (the "Fragment") struck the Angle home, penetrated the roof, pierced the ceiling of Cassandra's upstairs bedroom, and landed on Cassandra's bed, where the family cat was sleeping at the time. (FAC ¶¶ 12, 14, 18-20). The impact from the Fragment allegedly caused the home to shake violently and also caused a "percussive sound that [Cheryl] could only describe as something crashing through her home," which prompted her to call the Jefferson Police Department. (FAC ¶ 21). In addition, the Fragment struck the family cat, Sarah, severely injuring her and she was later euthanized "by a veterinarian in the presence of the family while being held in Brandon's arms." (FAC ¶ 20).

In addition to the alleged property damage suffered, including diminished market value and stigmatization in the community "because that house was shelled" (FAC ¶¶ 31, 34), family members allege emotional injury of varying degrees. Cheryl alleges that following the incident she was diagnosed with and continues to seek treatment for Acute Stress Disorder, Panic Disorder, Agoraphobia, and Chronic Post-Traumatic Stress Disorder. (FAC ¶ 29). The FAC details her alleged symptoms which range from panic attacks, depression, and flashbacks to the allegation that she "'hates' her house and yet feels high levels of distress in leaving it because of her symptoms of anxiety and social isolation." (FAC ¶ 29). In addition, she allegedly continues

to fear for her own safety and that of her family. Id. As a result, her marriage has allegedly "suffered tremendously" as well." (FAC ¶ 30). Notably, Cheryl alleges that before the day the Fragment hit her home, April 11, 2008, "she had never seen a therapist or taken mood-altering medications." (FAC ¶ 31). Likewise, Brandon has allegedly "sustained severe emotional injuries and was otherwise injured," such as experiencing fear and anxiety particularly while in the home. (FAC ¶ 35). He alleges that he has had to see therapists on multiple occasions and has "taken anti-depressants, suffered from insomnia, and cried as a result." Id.

Although Frederick and two of the children, Ryan and Cassandra, were not home at the time, the FAC alleges that Frederick and Cassandra suffered emotional injury as a result of the incident.[1] (FAC ¶¶ 12, 32-33, 35). Frederick alleges, in relevant part, that he was diagnosed with Adjustment Disorder, and details his feelings of anger and frustration as well as the strain on his marriage to Cheryl. (FAC ¶¶ 32-33). Similarly, Cassandra has allegedly entered therapy due, in part, to the fact that "she refused to sleep in her bedroom, and to this day has not slept in her bed or her bedroom," and has been diagnosed with a sleeping disorder, and deep anxiety and fear. (FAC ¶ 36).

As a result of the incident, a team of ARDEC investigators, engineers and analysts allegedly commenced an official investigation and issued an ARDEC Technical Analysis Team Report ("ARDEC Report"). (FAC ¶ 22). The ARDEC Report consisted of certain findings regarding the specifics of the Projectile such as its velocity and metallurgic tests, which determined that the Fragment was indeed a part of the Projectile. (FAC ¶¶23-24). The ARDEC Report also noted four instances where detonated munitions fragments exceeded anticipated distances and flew outside the test zone of military installations. (FAC ¶ 25). The ARDEC

---

[1] For the sake of completeness, the Court notes that Ryan does not assert any claims in the Amended Complaint.

Report also contained the following recommendations: (1) "[a]ll outdoor testing generating hazardous fragments that have the potential to exceed established Hazardous Fragmentation Distance (HFD) and represent a threat to personnel and property, should be performed with fragment containment measures in place"; (2) the ARDEC risk program should be modified to move explosive operations "to an off post location"; and (3) the "lessons learned and findings contained in [the report should be shared] with organizations conducting ammunition testing, explosive safety site planning, and explosive ordinance disposal operations." (FAC ¶¶ 26-28).

Each of the Plaintiffs allegedly filed a written Claim for Damages with the Department of the Army on or about September 8, 2009. (FAC ¶ 37). The Department of the Army allegedly took final administrative action on November 3, 2011. (FAC ¶ 38). On April 27, 2012, Plaintiffs filed suit in federal court. (CM/ECF No. 1). On September 14, 2012, Plaintiffs filed the FAC, presently under consideration, in which they assert fourteen causes of action which can be categorized as follows: (1) negligence (Counts I-IV); (2) intentional infliction of emotional distress (Counts V-VIII); (3) negligent infliction of emotional distress (Counts IX-X); and (4) nuisance (Counts XI-XIV). (CM/ECF No. 19). Defendant moved to dismiss the FAC on October 26, 2012, on the following grounds: (1) failure to state a claim for emotional distress; (2) failure to state a claim for nuisance; and (3) "to the extent that Plaintiff's claim that ongoing explosives testing constitutes a nuisance, the Court lacks subject matter jurisdiction to consider the claim" because it falls within the discretionary function exception and deprives the Court of jurisdiction.

## II. LEGAL STANDARD

4

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plaintiff's short and plain statement of the claim must "give the defendants fair notice of what the . . . claim is and the grounds upon which it rests." Twombly at 545 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (2007). Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555, 557 (2007)).

## III. DISCUSSION

As set forth above, Plaintiffs assert four types of claims: (1) negligence (Counts I-IV); (2) intentional infliction of emotional distress (Counts V-VII); (3) negligent infliction of emotional distress (Counts IX-X); (4) nuisance (Counts XI-XIV). Each of the Plaintiffs individually asserts negligence, intentional infliction of emotional distress and nuisance. However, only Cheryl and Brandon clearly assert a claim for negligent infliction of emotional distress.

As noted above, Defendant moves to dismiss only the emotional distress and nuisance claims. As to the former, Defendant argues, in part, that Plaintiffs may not recover for emotional distress arising from the injury to Sarah, the family cat, or damage to property. Plaintiffs do not address same in their Opposition. Accordingly, Defendant urges that Plaintiffs abandoned their emotional distress claims arising from the injury of their cat or property by not addressing the arguments relating to those claims in opposition to the instant motion. (Def.'s Reply 1). As to the latter, Defendant argues that dismissal of Plaintiffs' nuisance claims is warranted for two reasons: (1) failure to state a claim for nuisance relating to the incident of April 8, 2011; and (2) insofar as Plaintiffs argue that ongoing testing at Picatinny Arsenal constitutes a nuisance, the discretionary function exception deprives the Court of subject matter jurisdiction. Plaintiffs do not address the Government's arguments on either of those issues and accordingly the Court construes Plaintiffs' silence as abandonment of those claims. See e.g. Pollis v. Bd. Of Chosen Freeholders Cnty. of Sussex, Civ. No. 09-3009, 2012 WL 1118769, at *3 (D.N.J., Apr. 3, 2012); Newton –Haskoor v. Coface N. Am., Civ. No. 11-3931, 2012 WL 1813102, *at 7 (D.N.J. May 1, 2012); Duran v. Equifirst Corp., Civ. No. 09-3856, 2010 WL 936199, at *3 (D.N.J., Mar. 12, 2010) ("The absence of argument constitutes waiver in regard to the issue left unaddressed, and that waives the individual counts themselves."); Griglak v. CTX Mortg. Co., LLC, Civ. No. 09-5247, 2010 WL 1424023, at *3 (D.N.J. Apr. 18, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."). The Court will address the remaining claims which form the basis of the instant motion in turn.

The FTCA waives sovereign immunity for specific tort claims. See e.g., Miller v. Philadelphia Geriatric Center, 463 F.3d 266, 270 (3d Cir. 2006) ("The FTCA is a limited waiver

of the sovereign immunity of the United States."). The FTCA provides that the United States consents to be sued for negligent or wrongful acts or omissions of its employees acting within the scope of their employment "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Accordingly, the Court looks to the substantive tort law of the State of New Jersey, where the parties in this case do not dispute the conduct took place. Weber v. United States, 991 F. Supp. 694, 696 (D.N.J. 1998) (citing Ciccarone v. United States, 486 F.2d 253, 257 (3d Cir. 1973)). Finally, "[t]he waiver of the United States' sovereign immunity may not be enlarged by the courts, and its consent to be sued must be construed strictly in favor of the sovereign." Id. (citing United States v. Nordic Village, 503 U.S. 30, 34, 112 S.Ct. 1011 (1992)); United States v. Idaho ex rel. Dep't of Water Resources, 508 U.S. 1, 7 (1993).

### A. Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under New Jersey law, Plaintiffs must show: (1) Defendant acted intentionally or recklessly; (2) the conduct was so outrageous in character and extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) Defendant's conduct is the proximate cause of Plaintiff's emotional distress; and (4) the distress was so severe that no reasonable person could be expected to endure it. Buckley v. Trenton Saving Fund Soc'y, 111 N.J. 355, 366-67, 544 A.2d 857 (1998) (citing Restatement (Second) of Torts § 46). Defendant does not contest the third or fourth elements. As discussed below, the Court finds that Plaintiffs fail to state a claim as to the first element and, accordingly, will not address the second.

With regard to the first element, to be intentional, the defendant must intend "both to do the act and to produce product emotional distress." Id. at 366. Liability will also attach if a defendant "acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." Id. The Government argues that Plaintiffs' claims "simply do not rise to that level," and cites to the ARDEC Report findings that "[r]eview of the ARDEC Team report reveals no intentional conduct so outrageous in character or extreme in degree, as to go beyond all possible bounds of decency, or to be regarded as atrocious and utterly intolerable in a civilized community, nor any acts in deliberate disregard of a high degree of probability that emotional distress will follow." (Def. Mot. 4). In opposition to the instant motion, Plaintiffs clarify that recklessness forms the basis of their claim:

> The Army acted recklessly. Knowing that residential homes were a half-mile from the outer perimeter of the Arsenal and a mile from the Gorge Test Area, and knowing that on previous occasions fragments from tests had traveled further than anticipated, the Army nevertheless conducted repeated tests involving high-powered artillery shells.
>
> . . .
>
> That is especially the case where, as here, four similar tests previously had been conducted at military installations in which munitions fragments exceeded anticipated distances and flew outside the test zone.
>
> . . .
>
> The evidence in this case is as stunning as it is plentiful, and the [G]overnment cannot, and does not, argue that the Army did not act recklessly. With all due respect to the Army, did these tests *have* to be conducted a mile away from a residential neighborhood? Was it so hard to imagine that when shaped charges are fired at a high explosive artillery shell a mile away from a residential neighborhood *something* bad might happen, particularly when on four prior occasions, bomb fragments traveled further than anticipated? . . . Surely the Army had ample room within that base to conduct its tests in a location that was further away from civilian homes.

8

(Pl.'s Opp'n. 14, 18-19). Thus, Plaintiffs "submit that it was reckless *per se* to jeopardize innocent civilians – mothers and children living just outside the arsenal – knowing that on four previous occasions, shrapnel travelled further than the engineers anticipated." Id. at 19.

In Reply, Defendant argues that Plaintiffs' claims are deficient for two reasons. "First, they attempt to impose upon the employees of Picatinny Arsenal all of the information held by the 'Army.'" (Def. Reply 3). Defendant argues that "the Federal Tort Claims Act waives sovereign immunity for claims 'in the same manner and to the same extent as a *private individual* under like circumstances . . . .' 28 U.S.C. § 2674 (emphasis added). Accordingly, plaintiffs' references to what the 'Army' knew are irrelevant . . . The relevant facts are what the ARDEC researchers knew at the time." (Def. Reply, 3). The Court notes that Defendant does not cite to any case in support of its reading of "private individual."

"Second, they misrepresent the facts with respect to the other instances where fragments traveled further than expected." (Def.'s Reply 3). Defendants point to the ARDEC Report,[2] which states, in relevant part, as follows:

**Research of Similar Events**

As a result of the ARDEC fragment that flew to a location which exceeded the HFD [Hazardous Fragment Distance] calculation, TAT [Technical Analysis Team] made inquiries regarding similar events. Four similar events were found that occurred at other military installations in which fragments were reported impacting outside of the HFD.

(Def.'s Reply, 4; Gibbons Cert. Ex. 1, 13).

---

[2] The Court may properly consider the ARDEC Report because its authenticity is undisputed and it is explicitly relied on in the Complaint. Generally, if a court considers material submitted outside the pleadings on a Rule 12(b)(6) motion to dismiss, the court must treat the motion as one for summary judgment. Fed. R. Civ. P. 12(d). A court may exclude such outside matters and treat the Rule 12 motions as labeled. Pryor v. NCAA, 288 F.3d 548, 559 (3d Cir. 2002). However, "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (a court may consider a document that is integral to or explicitly relied on in the complaint without converting a motion to dismiss into one for summary judgment).

Here, Plaintiffs do not plead that Defendant deliberately disregarded a known risk. For example, they do not plead that anybody at the Picatinny facility was aware of the similar events at other military installations at the time of the incident in question, or that despite knowledge of other incidents, the testing facility was constructed in a similar manner or employed practices similar to the other facilities. Nor does Plaintiff otherwise sufficiently allege a *high probability* that *emotional distress* would follow. Indeed, even assuming arguendo that Defendants deliberately disregarded information about the incidents at other military installations, Plaintiffs do not allege that anybody suffered emotional distress in connection with those incidents or allege that there was a high probability of its occurrence, as opposed to property damage, for example. Accordingly, Plaintiffs fail to allege that the Defendant acted with a "deliberate disregard of a high degree of probability that emotional distress will follow." Buckley, 111 N.J. at 366.

Finally, the Court notes that despite Plaintiffs' assertion that Defendant's conduct amounts to "recklessness per se," Plaintiffs provide no guidance as to how the facts of the instant case would constitute same. In addition, the Plaintiffs point to no case that employs that analytical framework and the Court is unaware of any New Jersey case that deals with recklessness per se in the intentional infliction of emotional distress context. Accordingly, the Court dismisses Plaintiffs' intentional infliction of emotional distress claims without prejudice.

**B. Negligent Infliction of Emotional Distress**

The Supreme Court of New Jersey has explained that there are two general instances in which a plaintiff may maintain a claim for negligent infliction of emotional distress. The first is applicable where the defendant's negligent conduct placed the plaintiff in "reasonable fear of immediate personal injury" which gave rise to emotional distress that resulted in a substantial bodily injury or sickness. Jablonowska v. Suther, 196 N.J. 91, 103, 948 A.2d 610 (2008) (citing Falzone v. Busch, 45 N.J. 559, 569, 214 A.2d 12 (1965). The second, often referred to as a Portee claim, requires that the defendant's negligence caused the death of or serious injury to someone with whom the plaintiff shared a marital or intimate, familial relationship and the plaintiff had a sensory and contemporaneous observation of the scene and suffered severe emotional distress as a result. Jablonowska v. Suther, 195 N.J. at 104 (citing Portee v. Jaffee, 84 N.J. 88, 97, 417 A.2d 521 (1980)). Defendant does not argue that it was not negligent or that the distress allegedly suffered by Plaintiffs was not severe or substantial. Accordingly, as the Court finds that Plaintiffs do not state a claim for negligent infliction of emotional distress, it will confine its discussion to the elements addressed by Defendant.

As to the first claim, Defendant only disputes the requirement that a plaintiff be in "reasonable fear of immediate personal injury." Id. at 103 (citing Falzone, 45 N.J. at 569); Abouzaid v. Mansard Gardens Assocs., LLC, 207 N.J. 67, 77 (2011) ("Falzone adopted what was denominated the 'zone of danger' rule, which recognized that immediate fear of personal injury could serve as the basis for recovery so long as 'substantial bodily injury or sickness' resulted."). Stated another way, to be a foreseeable damage arising from negligent conduct, a plaintiff must be within the "zone of risk." Jablonowska v. Suther, 195 N.J. at 103.[3] Plaintiffs

---

[3] In explaining the common law tort of negligent infliction of emotional distress, the United States Supreme Court characterized the zone of risk test as follows: "Perhaps based on the realization that 'a near miss may be as frightening as a direct hit,' the zone of danger test limits recovery for emotional injury to those plaintiffs who sustain

11

urge that "[a] person plainly could experience 'reasonable fear of immediate personal injury' when a bomb fragment penetrates his home." (Pl.'s Opp'n. 22). It is worth reiterating that the FAC alleges that only Cheryl and Brandon were home at the time of the incident. Accordingly, to the extent that the other family members seek damages for emotional distress in conjunction with their negligence claims (Counts I and IV), such are not cognizable because those family members do not allege that they were in the zone of risk.

With regard to the family members that were home at the time of the incident, Defendant argues that Cheryl and Brandon do not allege that they were in reasonable fear of immediate personal injury because at the time the Fragment hit their home and landed in an upstairs bedroom, they allege only that they were in the kitchen downstairs and that they "heard a percussive sound" and called the police. (Def.'s Reply 3). Defendant continues: "Most importantly, there is no allegation that Cheryl or Brandon observed the fragment enter the bedroom, or that they feared immediate personal injury because of it or were anywhere 'within the zone of risk,' until the events were well over." Id. In addition to the allegations to which Defendant points, Plaintiffs also allege that the impact from the Fragment "caused [their] house to shake violently." (FAC ¶ 21). However, neither Cheryl nor Brandon clearly allege that they were in the zone of danger or that they were placed in fear of *immediate* personal injury as a result. Accordingly, the Court dismisses Frederick and Cassandra's claims for negligent infliction of emotional distress with prejudice and dismisses Cheryl and Brandon's claims without prejudice.

---

a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct. That is, 'those within the zone of danger of physical impact can recover for fright, and those outside of it cannot.'" (Consolidated Rail Corp. v. Gottshall, 512 U.S. 532, 548 (1994)).

As to the second, none of the Plaintiffs allege the requisite elements to state a Portee claim because they do not allege that they witnessed the death of an intimate family member or that they had a sensory and contemporaneous observation of such a scene. Although Plaintiffs do not argue that the death of Sarah, the family cat, would be sufficient in this instance, it bears noting that the New Jersey Supreme Court recently held that Portee claims do not encompass emotional distress suffered by a pet owner in connection with its death or injury. McDougall v. Lamm, 211 N.J. 203, 227-231, 48 A.3d 312 (2012). Accordingly, to the extent that Plaintiffs assert Portee claims for negligent infliction of emotional distress, those claims are dismissed with prejudice.

## IV. CONCLUSION

For the reasons detailed above, Defendant's motion to dismiss is granted in its entirety. Plaintiffs' intentional infliction of emotional distress claims are dismissed without prejudice. In addition, the Court dismisses with prejudice Frederick and Cassandra's claims for negligent infliction of emotional distress and all of the Plaintiffs' Portee claims for negligent infliction of emotional distress. The Court dismisses without prejudice Cheryl and Brandon's claims for negligent infliction of emotional distress insofar as they can allege that there were within the "zone of danger" at the time of the incident in question. Finally, Plaintiffs' nuisance claims are dismissed without prejudice. Plaintiffs may amend to attempt to cure the pleading deficiencies addressed herein within thirty (30) days.

An appropriate Order accompanies this Opinion.

DATED: 12/21/12

_____
José L. Linares
United States District Judge