**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| FREDERICK ANGLE, et al.,<br><br>                          Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA.<br><br>                          Defendant. | Civil Action No.: 12-2495 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of a motion to dismiss Plaintiffs' Second Amended Complaint ("SAC") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (CM/ECF No. 18) by Defendant United States of America ("Defendant" or the "Government"). The Court held oral argument on May 29, 2013. The Court has considered the submissions and arguments made in support of and in opposition to the instant motion. For the reasons set forth below, Defendant's motion to dismiss pursuant to 12(b)(1) is denied without prejudice, and the Court will order discovery regarding its jursidction. Accordingly, the Court will not reach the merits at this time, and denies without prejudice the Government's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. BACKGROUND

### A. Facts

Plaintiffs bring this action pursuant to the Federal Tort Claims Act ("FTCA"). The relevant facts alleged in the Second Amended Complaint are as follows. Plaintiffs Fredrick and

Cheryl Angle live in a home in Jefferson Township, New Jersey with their son Brandon Gadow and Cassandra Gadow. (Compl. ¶ 1).

The Picatinny Arsenal is located approximately half a mile away from the Angles' home. The facility contains the headquarters of the U.S. Army Armament Research Development and Engineering Center ("ARDEC"), which Plaintiffs maintain is the "Army's primary research and development arm for armament and munitions systems." (Compl. ¶ 10). Plaintiffs allege that ARDEC employees were aware that there are family homes immediately outside of the facility. (Compl. ¶ 12). Notwithstanding, the Army conducts research for the development of weapons, including live testing, in the portion of the facility called the Gorge Test Area. (Compl. ¶ 11). Plaintiffs allege that upon information and belief, in 2006, a bomb fragment traveled outside the facility, in what is known as "the Lake Denmark Picnic Area Incident of 2006." (Compl. ¶ 13). Plaintiffs further allege that upon information and belief, John Does 1-20, which included "scientists, weaponry engineers and munitions experts and technicians," were aware of the 2006 incident, and kept themselves informed of other accidents in connection with explosive tests, as part of their continuing job responsibilities and activities. (Compl. ¶¶ 17-19).

The incident which gave rise to the instant action allegedly occurred on April 11, 2008, at approximately 2:00 p.m., when a fragment of an M107 11-mm artillery projectile ("the M107 Projectile") "crashed through the roof of the home, pierced the ceiling of Cassandra's bedroom, and landed on Cassandra's bed," which caused the blanket on the bed to start to smolder. (Compl. ¶¶ 15, 23, 24). Both Cheryl and Brandon were downstairs in the kitchen at the time of the incident. (Compl. ¶ 15). The other family members were not home. Cheryl and Brandon "heard and physically felt an extremely strong explosive percussion," which "emanated directly above Cheryl and Brandon's heads and shook the entire house," and made them fear immediate

2

personal injury.  (Compl. ¶ 25).  At that point, Plaintiffs allege that Cheryl made calls to Frederick and, at some point, the Jefferson Police Department.  (Compl. ¶ 25).  Both Jefferson Township and Picatinny Arsenal police officers allegedly responded to the home.  (Compl. ¶ 26). Plaintiffs detail the emotional distress allegedly suffered as a result of the incident by each of the family members.  (Compl. ¶¶ 35, 36, 38, 39, 41, 42).  In addition, Plaintiffs allege that upon information and belief, the value of their home was greatly reduced as a result of the incident. (*See, e.g.*, Compl. ¶ 40).

ARDEC conducted an investigation, during which outdoor testing was temporarily suspended at Picatinny.  (Compl. ¶ 26).  The investigation revealed that the fragment that entered the Angle's house was part of the M107 projectile.  (Compl. ¶ 27).  The ARDEC Report ("Report") also noted, in relevant part, that there were four other incidents where fragments exceeded the test area at military facilities.  (Compl. ¶ 29).  The Report also recommended, in relevant part, that "[a]ll outdoor testing generating hazardous fragments that have the potential to exceed established Hazardous Fragmentation Distance . . . and represent a threat to personnel and property, should be performed with containment measures in place," and that the explosive operations be moved "to an off post location."  (Compl. ¶¶ 29-30).

Aside from slight changes to the allegations of the previous Complaint, Plaintiffs add a number of new allegations.  Plaintiffs allege that on the day of the incident, Commanding Officer of the Picatinny Arsenal, Brigadier General William Phillips ("General Phillips"), visited the Angle home and said "this is our fault, we are taking this on the chin, and whatever it takes to make this right we will do."  (Compl. ¶ 33).  General Phillips allegedly returned a few days later with Brigadier General Bert K. Mizusawa, Assistant Deputy Chief of Staff.  (Compl. ¶ 34). General Phillips allegedly gave Cassandra military coins.  (Compl. ¶ 34).  Thereafter, he

allegedly invited Frederick and Cheryl to his home for a "spaghetti dinner" and had pre-embargo Cuban cigars and scotch with Frederick. (Compl. ¶ 34). He also allegedly invited the Angle family to the Pentagon. (Compl. ¶ 34). Generally Phillips allegedly "showered [the Angle family] with gifts in order to manipulate their emotions, deflect responsibility for John Doe 1-20's reckless actions, and shield the U.S. Army from liability." (Compl. ¶ 34).

## B. Procedural History

On April 27, 2012, Plaintiffs filed suit in federal court. (CM/ECF No. 1). On September 14, 2012, Plaintiffs filed the First Amended Complaint ("FAC"). Defendant moved to dismiss the FAC on October 26, 2012, on the following grounds: (1) failure to state a claim for emotional distress; (2) failure to state a claim for nuisance; and (3) "to the extent that Plaintiff's claim that ongoing explosives testing constitutes a nuisance, the Court lacks subject matter jurisdiction to consider the claim," arguing that it fell within the discretionary function exception and deprived the Court of jurisdiction. Accordingly, it is worth noting that in its previous motion to dismiss, the Government only raised the discretionary function exception in relation to its argument regarding Plaintiff's nuisance claim. Defendant's motion was granted.

On February 8, 2013, Plaintiffs filed the SAC presently before the Court. (CM/ECF No. 34). The SAC once again contains fourteen causes of action, which can be categorized as follows: (1) negligence asserted by each individual family member (Counts I-IV); (2) intentional infliction of emotional distress on behalf of each individual family member (Counts V-VIII); (3) negligent infliction of emotional distress suffered by Cheryl and Brandon (Counts IX-X); and (4) nuisance asserted by each individual family member (Counts XI-XIV). Defendant filed a motion to dismiss same on March 20, 2013. (CM/ECF No. 35).

4

## II. LEGAL STANDARDS

The Government moves to dismiss Plaintiffs' SAC pursuant to 12(b)(1) and 12(b)(6).

### A. Federal Rule of Civil Procedure 12(b)(1)

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a court must dismiss a complaint if it lacks subject matter jurisdiction to hear a claim. In contrast to a 12(b)(6) motion to dismiss for failure to state a claim, in a challenge to the court's jurisdiction under 12(b)(1), "[t]he plaintiff has the burden of persuasion to convince the court it has jurisdiction." *Gould Elec. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

Motions to dismiss under Rule 12(b)(1) may be treated as either a "facial or factual challenge to the court's subject matter jurisdiction." *Gould*, 220 F.3d at 176. Under a facial attack, the movant challenges the legal sufficiency of the claim and the Court considers only "the allegations of the complaint and documents referenced therein and attached thereto in the light most favorable to the plaintiff." *Id.* In reviewing a factual attack, however, the challenge is to the actual alleged jurisdictional facts. In that instance, a court is free to consider evidence outside of the pleadings. *Id.* "The plaintiff must either prove the truth of the [necessary jurisdictional facts] or stand by while the court evaluates those allegations in the same way a jury would evaluate [those facts] as part of [the] plaintiff's case on the merits." *S.R.P. ex rel. Abunabba v. U.S.*, 676 F.3d 329, 343 (3d Cir. 2012) (brackets in original) (citing *Mortensen v. First Federal Sav. and Loan Ass'n*, 594 F.2d 884, 891 (3d Cir. 1977)).

**B. Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's short and plain statement of the claim must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In evaluating the sufficiency of a complaint, a court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Further, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555, 557).

### III. DISCUSSION

As noted above, the Government moves to dismiss Plaintiffs' Second Amended Complaint on two separate grounds: lack of subject matter jurisdiction as a result of the discretionary function exception to the FTCA, and failure to state a claim. Having considered the allegations of the SAC and the arguments set forth by the parties, it is unclear to the Court whether it has subject matter jurisdiction based on the present record. Accordingly, the Court

denies without prejudice the Government's motion to dismiss and will order discovery on the limited issue of jurisdiction. If and when the Court is satisfied that it has jurisdiction, Defendant may renew its motion to dismiss for failure to state a claim, and the Court will consider the merits of Plaintiffs' claims.

As explained in the Court's Opinion in this case, the FTCA waives sovereign immunity for specific tort claims. 28 U.S.C. § 1346(b); *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (VARIG Airlines)*, 467 U.S. 797, 808 (1984); *Miller v. Philadelphia Geriatric Center*, 463 F.3d 266, 270 (3d Cir. 2006) ("The FTCA is a limited waiver of the sovereign immunity of the United States.").

Section 1346(b) of Title 28 of the United States Code authorizes suits against the United States for damages

> for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1); *VARIG Airlines*, 467 U.S. at 807-08. In addition, the FTCA provides that the United States shall be liable with respect to tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674; *VARIG Airlines*, 467 U.S. at 808.

"The waiver of the United States' sovereign immunity may not be enlarged by the courts, and its consent to be sued must be construed strictly in favor of the sovereign." *Weber v. United States*, 991 F. Supp. 694, 696 (D.N.J. 1998) (citing *United States v. Nordic Vill.*, 503 U.S. 30, 34 (1992)); *United States v. Idaho ex rel. Dep't of Water Res.*, 508 U.S. 1, 7 (1993). The FTCA "imposes a significant limitation" on its limited waiver of immunity, referred to as the

discretionary function exception. *Abunabba*, 676 F.3d at 332. That exception provides that the general provision of § 1346 shall not apply to:

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a); *VARIG Airlines*, 467 U.S. at 808. "The discretionary function exception, embodied in the second clause of § 2680(a), marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *VARIG Airlines*, 467 U.S. at 808; *Abunabba*, 676 F.3d at 332. "The exception 'does not apply to every situation in which there is an actual option to choose between courses of action or inaction.'" *Id.* at 332 (quoting *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997). "Rather, it immunizes from second-guessing 'legislative and administrative decisions grounded in social, economic, and political policy.'" *Id.* (quoting *Gotha*, 115 F.3d at 179).

Here, as the Government attacks the jurisdictional facts, namely those which relate to whether the discretionary function applies, the Court may consider evidence outside the pleadings. *See Abunabba*, 676 F.3d at 332. Accordingly, the Court "must weigh the evidence relating to jurisdiction, with discretion to allow affidavits, documents, and even limited evidentiary hearings." *Id*. at 343. Where, as here, the jurisdictional facts are intertwined with the merits, there is a relaxed standard of proof for the jurisdictional question. *Id*. at 344. "In such a case, a district court may determine whether jurisdiction exists without reaching the merits 'so long as the court 'demands [of plaintiff] less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id*. (quoting *Gould Electronics*, 220 F.3d at 178).

8

In the discretionary function exception context, a complaint cannot survive a motion to dismiss unless it alleges facts "which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *United States v. Gaubert*, 499 U.S. 315, 324-25 (1991). In the Third Circuit, "[a]lthough a plaintiff bears the burden of establishing that his claims fall within the scope of the FTCA's waiver of the federal government's sovereign immunity (i.e., that the requirements of 28 U.S.C. § 1346(b)(1) are met), the Government has the burden of proving the applicability of the discretionary function exception." *Abunabba*, 676 F.3d at 333 (citing *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008)). The parties do not dispute that the claims at issue in this case fall within the FTCA's waiver of sovereign immunity. Where the Government bears the burden of proving the necessary jurisdictional facts, the relaxed standard of proof discussed above does not apply. *Abunabba*, 676 F.3d at 345.

The threshold issue in determining the applicability of the exception is identifying the conduct at issue. *Id.* at 334 (citing *Merando*, 517 F.3d at 165). The Court then follows a "two-step inquiry to determine whether the discretionary function exception immunizes the government from a suit arising out of such conduct": (1) did the act giving rise to the alleged injury involve an "element of judgment or choice"; and (2) whether the challenged action or inaction is "of the kind that the discretionary function exception is designed to shield." *Id.* at 332-333 (quoting *United States v. Gaubert*, 499 U.S. at 322).

The exception does not apply where a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow because the employee has no choice but to follow the directive. *Id.* at 333; *Gotha*, 115 F.3d at 181 (citing *Berkovitz by Berkovitz v. U.S.*, 486 U.S. 531, 536 (1988) ("[R]egulations that give no options to a government agency take away

9

the exercise of discretion."). "Because the purpose of the exception is to prevent judicial

'second-guessing' of legislative and administrative decisions grounded in social, economic, and

political policy ... the exception protects only governmental actions and decisions based on

considerations of public policy." *Gaubert,* 499 U.S. at 323 (internal marks and citations omitted).

 The Government argues that the discretionary function exception deprives the Court of

subject matter jurisdiction because the decision to conduct testing at Picatinny is discretionary

and based on economic policy. (Def.'s Mot. 3). As discussed above, the Government bears the

burden of establishing that the discretionary function exception applies. In addition, while the

Court generally employs a relaxed standard in determining jurisdictional facts, the relaxed

standard of proof discussed above does not apply here. *Abunabba*, 676 F.3d at 345.

 First, the Government emphasizes the necessity of strictly construing the waiver of

sovereign immunity in the FTCA. Second, the Government argues that the discretionary

function exception applies under the two-part test established by the Supreme Court. (Def.'s

Mot. 9) (citing *Gaubert*, 499 U.S. at 324-35). In support of its argument, the Government relies

on a five-page Declaration of Harley Chase, the current Director of the ARDEC Risk

Management Office, who was not an employee at Picatinny Arsenal at the time of the alleged

incident. (CM/ECF No. 23-2). As discussed above, the Court can properly consider same, as the

issue before the Court is a factual attack to its jurisdiction under 12(b)(1).

 In its brief, the United States specifically argues:

> The Army has equipped the Arsenal with sophisticated equipment to
> conduct explosives testing. The facilities available are unique, and the
> research being conducted is vitally important to our soldiers. The cost
> of moving the research facilities is prohibitive. (Chase Declaration ¶ 5).
> In addition, the development and testing of conventional weaponry is
> critical for fulfilling the Army's mission, and the decision to conduct
> testing is well within the discretion of the military. Such decisions by
> military branches have been held to be quintessentially discretionary.

(Def.'s Mot. 9) (quoting Declaration of Harley Chase) (citing *Sanchez ex rel. D.R.-S v. U.S.*, 671 F.3d 86, 99-103 (1st Cir. 2012)) (holding that the discretionary function exception barred suit against the U.S. Navy for injuries arising out of testing and reaffirming that "military activities carried out by the Navy . . . involve[] discretionary decision-making of the most fundamental kind, requiring balancing competing concerns of secrecy and safety, national security and public health"). Based on the record currently before the Court, however, it appears that those contentions could conceivably apply to any decision by the Army. "Consideration of tenets that sweep so broadly is of little use in the application of the discretionary function exception here." *Gotha*, 115 F.3d at 181.

In addition, at oral argument, the Government pointed to the extensive regulations referenced in the Declaration of Mr. Chase. However, the Government did not establish which part, if any, of those extensive regulations apply to the type of testing at issue in this case and whether the testing complied with same. Rather, the Government generally maintained that "[t]here is no rule, regulation or policy that forecloses explosive testing . . . " and that the applicable regulations do not "require the testing to be done in the manner in which it was done, but [don't] foreclose it either." (Tr. 5:12-13; Tr. 6:21-7-6).

Plaintiffs maintain that the conduct at issue here "was a single explosives test conducted in a reckless manner by federal employees in the vicinity of residential homes that resulted in harm to persons." (Pls.' Opp'n. 17). They also note that they

> take no issue with the Army's decision to conduct testing at Picatinny. To the contrary, plaintiffs enthusiastically support the mission of ARDEC and have lived next to Picatinny for years without complaint. Rather, it was the manner in which *one test in particular* was conducted, in reckless disregard of the safety of the neighboring civilian population, which left a shattered home and a broken family, that plaintiffs challenge.

11

(Pls.' Opp'n. 18-19).  They contend that they are only challenging "a single act, on a single day, in which government employees who had ample prior notice that their explosives testing posed a risk to others acted recklessly and hurt a family." (Pls.' Opp'n. 20).  Plaintiffs also argue that despite the fact that the discretionary function exception might apply, "it does not follow that because the Army has the right to conduct explosives testing at Picatinny, it therefore has the right to act in reckless disregard of the safety of others." (Pls.' Opp'n. 21).  The Court notes that Plaintiffs cite no authority in support of that argument.

In addition, Plaintiffs argue that the discretionary function exception does not apply where factual allegations preclude an inference that the Government acted with due care.  They argue that "as a matter of basic statutory construction, the 'due care' language of 28 U.S.C. § 2680(a) applies to *both* the execution of a statute or regulation *and* the exercise or performance of a discretion." (CM/ECF No. 47).  On the other hand, the Government asserts that "[t]he 'due care exception' is different from the 'discretionary function exception.'" (CM/ECF No. 46) (citing *Crumpton v. Stone*, 59 F.3d 1400, 1403 (D.C. Cir. 1995); *Welch v. United States*, 409 F.3d 646, 651-52 (4th Cir. 2005); *Hydrogen Tech. Corp. v. United States*, 831 F2d 1155, 1160 (1st Cir. 1987); *Borquez v. United States*, 773 F.2d 1050, 1052 (9th Cir. 1985); *Terrell v. Hawk*, 154 Fed. App'x. 280, 283, 2005 WL 2760833, at *2 (3d Cir. 2005)).  Plaintiffs admit that the due care exception has been recognized by courts, but they "submit that 28 U.S.C. § 2680 – which is part of the FTCA – did not create a due care exception.  In the handful of cases cited above, courts misread the statute and, likely at the behest of the government, recognized an exception where none exists." (CM/ECF No. 47).  Notably, Plaintiffs do not point to any case or legislative history which would compel the result they seek.

12

Statutory interpretation turns on "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). In interpreting a statute, one begins with the language of the statute and determines "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Id.* at 340; *CSX Transp., Inc. v. Ala. Dept. of Revenue*, --- U.S. ---, 131 S. Ct. 1101, 1107 (2011). This Court does not find any ambiguity in the plain language of § 2680(a). It contains two clauses which each create an exception to the FTCA's waiver of sovereign immunity. The first exempts from liability any claims based upon the execution of a statute in due care, whether or not the statute is valid. The second clause applies to the exercise or performance of a discretionary duty or function, whether or not it is in due care. There is no indication from the language of the statute that the due care requirement within the first clause is also applicable to the second clause. Further, as set forth above, the Supreme Court has recognized that the discretionary function exception is "embodied in the second clause of § 2680(a)." *VARIG Airlines*, 467 U.S. at 808 ("The discretionary function exception, embodied in the second clause of § 2680(a), marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."). In addition, the applicable analysis set forth by the Supreme Court does not involve an inquiry into whether the due care was exercised. *Gaubert*, 499 U.S. at 322; *Gen. Pub. Util. Corp. v. United States*, 745 F.2d 239, 245 (3d Cir. 1984) ("If a government employee performing a discretionary function acts negligently, the exemption remains applicable even though the activity constitutes an abuse of discretion."); *see also Kohl v. United States*, 699 F.3d 935, 942 (2012) (quoting *Rosebush v. United States*, 119 F.3d 438, 442 (6th Cir. 1997)) ("[N]egligence is irrelevant at this stage of the inquiry.").

13

Finally, Plaintiffs argue that the Court should exercise jurisdiction as a matter of public policy. (Tr. 21:7-22).[1] Although not explicitly stated by Plaintiffs, the Court finds this argument most applicable to the second inquiry in the discretionary function exception test, determination of which is more appropriate after jurisdictional discovery.

Having reviewed the record before it, the Court finds that in order to determine whether the discretionary function exception applies in this case, additional information as to the jurisdictional facts is necessary. For example, based on the record before the Court, it is unclear which provisions of the extensive regulations cited to by the Government,[2] if any, govern the type of testing at issue here; how the testing at issue was conducted generally; whether that testing was done in conformity with the applicable regulations, if any; or whether the incident in question arose as a result of a deviation from any applicable regulations. Accordingly, the Court will order discovery on the jurisdictional issue so it can properly determine whether the act giving rise to the alleged injury involved an "element of judgment or choice," and whether the challenged action or inaction is "of the kind that the discretionary function exception is designed to shield." *Abunabba*, 676 F.3d at 336, 345.[3]

---

[1] The Court notes for the sake of completeness, that at oral argument Plaintiff analogized this case to medical malpractice in a government medical facility. However, based on the record before the Court, it cannot find that situation analogous to the instant case. As a general matter, doctors do not have discretion to deviate from accepted standards of care.

[2] The Government submits that the following Department of Defense (DOD) and Army Regulations (AR) apply to handling and testing ordnance:

> The applicable references are Department of the Army Pamphlet (DA PAM) 384-64, *Ammunition and Explosives Safety Standards* and Department of Defense (DOD) 6055.9-STD, *DOD Ammunition and Explosive Safety Standards*. This Standard, issued under the authority of DOD Directive 6055.9, *DOD Explosives Safety Board (DDESB), and DOD Explosives Safety Responsibilities*, July 29, 1996, establishes uniform safety standards applicable to ammunition and explosives.

(Chase Decl. ¶ 3).

[3] The Court additionally defers determination of the threshold issue of defining the conduct at issue until after jurisdictional discovery is complete. The Court notes, however, that during oral argument, the parties clarified their respective positions on that issue. Specifically, the Government contends that the conduct at issue is the decision to

The Court also notes that the Third Circuit has held that the discretionary function exception does not apply where the Government is aware of a specific risk of harm, and eliminating the danger would not implicate policy but would involve only garden-variety remedial measures. *Abunabba*, 676 F.3d at 340. Examples of garden-variety remedial measures are "basic steps to alleviate specific safety concerns." *Id.* at 338. In those instances, "the Government's conduct is analogous to that of a private citizen who fails to take appropriate action to ensure the safety of a visitor on his or her property, and thus no broad public policy concerns are implicated." *Id.* Examples include failing to install a handrail or lighting on a steep pathway at a navy facility, and failing to provide adequate lighting and warning signs in a lot in an area controlled by the National Park Service where a plaintiff was shot and killed. *See Gotha*, 115 F.3d 176; *see also Cestonaro v. United States*, 211 F.3d 749 (3d Cir. 2000). While neither party raises that argument, discovery on the jurisdictional issue will aid the Court in determining whether the exception is applicable.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, the Court denies the Government's motion to dismiss. The Government may reassert its motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) at the conclusion of discovery on the jurisdictional issue and, in the event that the Court finds that the discretionary function exception does not apply, the Government may then reassert is motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

An appropriate Order accompanies this Opinion.

---

carry out weapons testing at Picatinny Arsenal. On the other hand, Plaintiffs maintain that the conduct at issue is conducting the particular test at issue in a reckless manner.

Dated: 6/18/2013

_____
Jose L. Linares
United States District Judge

16